IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| KEVIN LANE FOWLER | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-cv-00687 |
| | § | |
| SMITH COUNTY, TEXAS; JOSH JOPLIN, individually and acting in his official capacity; MICHAEL W. PEHL, individually and acting in his official capacity; TERRY BRUNK, individually and acting in his official capacity; and SCOTT SMITH, individually, and acting under color of law in concert with the constables of Smith County | § § § § § § § § § § | |
| | § | |
| *Defendants* | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE ROBERT W. SCHROEDER, III:

Plaintiff Kevin Lane Fowler files this Original Complaint, complaining of Defendants, Smith County, Texas; Constable Josh Joplin, individually and acting in his official capacity; Deputy Constable Michael W. Pehl, individually and acting in his official capacity; Sergeant Constable Terry Brunk, individually and in his official capacity; and Scott Smith, individually and acting under color of law in concert with the constables of Smith County, and in support thereof, would respectfully show the Court as follows:

### INTRODUCTION

This matter arises from the most fundamental of civil rights. Under a government of laws, the pursuit of criminal charges against an individual based solely on spite and vengeance cannot stand. When a state actor, in whom the public has placed its trust as an officer of the law, refuses

payment of a $2500 debt, and instead insists that a criminal charge be pursued, the law affords relief. Kevin Fowler seeks such relief in this Court.

## I.     Jurisdiction and Venue

1. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b), because the Defendants are domiciled or reside in the Eastern District of Texas, and a substantial part of the events giving rise to Plaintiff's claims occurred either in this district and division, or when Plaintiff was staying in this district and division, in Cooke County, Texas, for his business.

2. Pursuant to 42 U.S.C § 1983, Plaintiff alleges herein one or more ongoing violations of federal law, and seeks prospective relief, declaratory and injunctive, against state officials in their official capacities.

## II.     Parties

3. Plaintiff Kevin Lane Fowler (also "Kevin" or "Fowler") is a citizen of the United States, and resides in Grand Saline, Van Zandt County, Texas, as well as in Gainesville, Cooke County, Texas, where he frequently stays when on business for work in Fort Worth and Decatur, Texas and Oklahoma City, Oklahoma.

4. Defendant, Smith County, is a political subdivision of the State of Texas, and can be served by serving its County Judge, Nathaniel Moran, at 200 E. Ferguson, Suite 100, Tyler Texas 75702, or wherever he may be found. TEX. CIV. PRAC. & REM. CODE, § 17.024(a).

5. Defendant Josh Joplin is the Constable Precinct 4 of Smith County, Texas, and he may be served with process at his work address of 14152 Hwy 155 N, Winona, Texas 75792, or wherever he may be found.

6. Defendant Michael W. Pehl is the Deputy Constable/Investigator for Precinct 4 of Smith County, Texas, and he may be served with process at his work address of 14152 Hwy 155 N, Winona, Texas 75792, or wherever he may be found.

7. Defendant Terry Brunk is the Sergeant Constable for Precinct 4 of Smith County, Texas, and he may be served with process at his work address of 14152 Hwy 155 N, Winona, Texas 75792, or wherever he may be found.

8. Defendant Scott Smith is a resident of Tyler, Texas, and he may be served with process at 14351 CR 220, Tyler, Texas 75707, or wherever he may be found.

9. The individual Defendants are sued in their individual and their official capacities, to the extent they were acting on behalf of Smith County, Texas. As set forth below, Scott Smith, who is a police officer with the city of Tyler, acted in concert with the constables sued herein, and is therefore a state actor for all purposes.

### III. Factual Background

10. Fowler and his family live in Grand Saline, in East Texas. Kevin makes his living servicing and repairing locomotives. For his business, he travels all over the United States.

11. In 2016, Kevin's wife, Kimberly Dawn Fowler, owned the family company, which is called Texas Locomotive Solutions ("Texas Locomotive"). Texas Locomotive leased the Rosebowl Speedway, in Winona, Texas, and in August 2016 was in the process of making improvements on the grounds. Kevin's son, Casey Fowler, took the lead in getting the work done.

12. On behalf of Texas Locomotive, Casey ordered and paid for approximately twenty loads of dirt and clay for the speedway. Casey then called CEM-J Enterprises, LLC ("CEM-J") to have them haul the dirt from the clay pit to the speedway. Defendant Scott Smith owns CEM-J,

but Casey did not speak with Smith specifically when he called CEM-J and agreed to pay $2500 for the hauling job.

13. CEM-J attempted to perform the hauling, but evidently had only one truck. The first day, only three loads were hauled. The second day, CEM-J's driver dropped a load on the road, but delivered three other loads. CEM-J's driver also mistakenly dropped part of a load in sand, after failing to close the doors on the truck, corrupting the dropped load. The third day, CEM-J's truck broke. On the fourth day, Texas Locomotive fired CEM-J. Texas Locomotive hired a new hauler, who completed the work.

14. At no point in this process did any of the Fowlers deal with Scott Smith, nor did Kevin Fowler speak to the driver or anyone else at CEM-J. After firing CEM-J, Casey called the company and asked that they send Texas Locomotive a bill for the work that had been done. At this point, Smith, who had never been out to the Speedway, or at the clay pit, when CEM-J was attempting to haul the dirt, got involved.

15. Smith insisted that $3500 was owed, despite CEM-J's incomplete and substandard performance, and despite the fact that the original price quoted had been $2500. Smith began exchanging texts in September and October 2016 with the Texas Locomotive work phone used by Kevin Fowler and by others. When Smith received a text from the phone which angered him, he determined that Kevin Fowler, whom he had never met, was going to be taught a lesson.

16. Smith is, or was, a police officer with the city of Tyler, Texas, in addition to owning CEM-J, which he describes as "a small construction company." When Texas Locomotive had not paid CEM-J by December 2016, and Smith had received the text he considered rude, Smith determined that a crime had been committed. He went to Smith County Constable Josh Joplin and gave a statement accusing Kevin Fowler of theft of service, defined in section 31.04 of the Texas

Penal Code.1 Under subsection 31.04(e)(4), "if the value of the service stolen is $2,500 or more but less than $30,000," the offense is a "state jail felony." Smith has testified that he was familiar with the elements of theft of service at the time he brought the charges.

17. Constable Josh Joplin, who took Smith's statement, testified that Smith and Fowler "had a disagreement about the dirt," and that Smith was not paid. Joplin testified at length that he took his role as an elected public servant seriously, and also that he knew it was important to have all elements of a crime before bringing charges. After taking Smith's statement, but without attempting to determine whether any demand had been made in accordance with the statutory definition of "notice," Joplin turned the matter over to deputy constable Michael Pehl for "investigation."

18. Pehl contacted Kevin and told him that if he had a dispute over the amount services performed, he should file a civil action. There is no indication that anyone with the constable's department told Smith he should file a civil action. Pehl never attempted to determine whether

---

[1] Pursuant to the Texas Penal Code,

(a) A person commits theft of service if, with intent to avoid payment for service that the actor knows is provided only for compensation:

….

    (4) the actor intentionally or knowingly secures the performance of the service by agreeing to provide compensation and**,** after the service is rendered, **fails to make full payment after receiving notice demanding payment.**

(b) For purposes of this section, intent to avoid payment is presumed if:

….

    (2) the actor failed to make payment under a service agreement within 10 days **after receiving notice demanding payment;**

. . .

(c) For purposes of **Subsections (a)(4), (b)(2),** and (b)(4), **notice shall be notice in writing, sent by registered or certified mail with return receipt requested or by telegram with report of delivery requested.**

TEX. PENAL CODE § 31.04 (emphasis added).

notice of demand had been made in accordance with the statute. On or about October 24, 2017, Pehl obtained an arrest warrant to be issued for Kevin Fowler, and went to Fowler's home looking for him. At that time, Fowler was staying and working in Gainesville, Cooke County, Texas.

19. Alarmed and horrified by the prospect of Kevin being arrested over this disputed dirt-hauling agreement, Kim Fowler immediately went to the Constable's office to pay the full amount of $3,500, or whatever amount Smith might be demanding. Defendant Terry Brunk, the Constable Sergeant in Precinct 4, told her this was "Mike's case," referring to Defendant Michael Pehl. Brunk then called Pehl, saying that Kevin's wife was in the office with "cash money." After speaking with Pehl, Brunk refused payment, telling Kim, "He doesn't want his money, he wants his ass in jail."

20. Kim Fowler next called Defendant Smith herself, to offer to bring him payment. Smith has testified that when Kim Fowler called him to offer payment, he refused because "he was letting the constables deal with it." What he actually told her was that Kevin needed to be taught a lesson. Either Brunk or Smith or both told Kim Fowler "you can't talk to police like that," referring to the text which had been sent to Smith. On another occasion, Smith stated to a friend of Casey's that Kevin "doesn't know who he's messing with. I'm a Tyler cop."

21. Eventually, Kevin returned to East Texas and turned himself in. Despite presenting himself voluntarily, and expecting to be booked in and out, Kevin was kept in jail for eight hours. On or about January 26, 2018, Fowler was required to sign conditions of bond. Bond was set at $20,000.00, over five times the amount in controversy, despite this being a first offense. Further, the conditions of bond required weekly drug testing, to take place in Tyler, Texas, and required Kevin to remain in Smith County and Van Zandt County, Texas, despite the fact that Kevin Fowler

earns his living working outside Smith County, and outside the State of Texas. Kevin was further ordered not to use any alcohol nor to possess a firearm.

22.  The conditions of Kevin's bond were later modified so that he could leave the State of Texas for work, but not before he had lost a potential job for the Kansas City Southern Railroad which would have paid $850,000. Moreover, even when Kevin was able to work outside the State of Texas, for example, in Binghamton, New York, he was forced to incur the cost of plane fare to return to Smith County repeatedly for monthly drug tests.

23.  On September 5, 2018, almost a year after the arrest warrant was issued, and two years after the hauling job, Fowler was indicted.

24.  The case was set for jury trial in October 29, 2018, but was not heard.

25.  On November 25, 2018, Scott Smith, for the first time, sent a certified demand for payment to Kevin Fowler. Smith testified that he sent this letter under instructions from the district attorney. Fowler, through his counsel, tendered a $3500 check on December 11, 2018. Defendant Smith, the complainant in the criminal proceeding, refused to meet with the process server hired to give him the law firm's check.

26.  On December 11, 2018, Fowler's counsel informed the prosecutor of these facts, and offered to provide a sworn statement as to Smith's refusal to accept the check or even meet with the process server who was trying to deliver the check. Fowler's counsel requested that the district attorney review the case. The district attorney did not drop the case, but directed Smith to accept the check, which he did on December 14, 2018.

27.  By January 14, 2019, Fowler's counsel had provided the district attorney with copies of the demand, the service return, and a copy of the cancelled check. Still, the case was not

dismissed. In March 2019, Fowler moved for discovery of the certified demand for payment required by Texas Penal Code Section 31.04(a)(4).

28. Finally, in April 2019, the felony indictment for theft of service went to trial in the 241st Judicial District Court in Smith County, Texas. On motion for directed verdict of acquittal, the judge signed and entered an order of acquittal on April 16, 2019.

29. On June 27, 2019, Fowler's Petition for Expunction was granted and an Order was entered regarding the charge and offense pursued by Defendants against Kevin Fowler.

30. At no time was there any probable cause to initiate or procure the prosecution of this charge against Fowler. The key element of "notice" as defined by the statute had never taken place, nor did the Smith County constables ever attempt to determine whether it had. Instead, payment was repeatedly refused and this matter was prosecuted as a criminal complaint solely because Scott Smith, acting in concert with the Constables of Precinct 4 of Smith County, believed that Kevin Fowler has shown disrespect to a police officer.

31. The Defendants acted with malice, as shown by their comments about how police officers should be treated, and their continuing refusal to accept payment, even up to the eve of trial. Malice is further shown by the bond required of $20,000, for a first offense involving only $3,500. Defendants' motives, as expressed by Defendant Smith and others, include the belief that Fowler had shown inadequate respect to a police officer, namely Smith, and therefore the prosecution was going to go forward against Kevin Fowler, and put him in jail, despite the lack of probable cause and the repeated attempts to pay by Texas Locomotive.

32. The damages to Fowler have been extensive, and have ranged from the cost and inconvenience of having to pay to store his firearms, to the cost of legal representation, to the travel costs for having to repeatedly return to Smith County from upstate New York and elsewhere for

drug testing, to the loss of hundreds of thousands of dollars in work which he was unable to pursue due to the limits on his travel during the years this baseless case dragged on.

33. In addition to his pecuniary losses, Kevin Fowler was subjected to humiliation at having to explain his situation to his pastor, and having his mother-in-law, who was being cared for by Kim at home, asking "Is Kevin going to jail?" Defendants put Kevin Fowler's mugshot on social media, doing all they could to harm his reputation. Kevin Fowler has suffered mental anguish and emotional distress through this ordeal, for which he seeks additional damages.

34. At all times, Smith was a state actor, and acting under color of law, by virtue of his joint efforts with the constables of Smith County Precinct 4 to use a baseless prosecution to punish Kevin Fowler.

35. The unconstitutional actions of the individual defendants were, on information and belief, pursuant to the customs, policies, and practices of Smith County, which were directed, encouraged, allowed, and/or ratified by Constable Josh Joplin, who acted as a policymaker for Smith County in permitting his office to engage in carrying out Scott Smith's vendetta against Fowler in violation of the equal protection guarantees of the Fourteenth Amendment. Smith County failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants Joplin, Pehl, and Brunk, thus tolerating and ratifying their conduct and permitting it to injure Kevin Fowler.

36. Defendants subjected Fowler to their wrongful conduct, depriving him of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether his rights, and the rights of others, would be violated by their acts/omissions.

37. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, and practices of Smith County, Texas, by and through Defendants Joplin, Pehl, and

Brunk, and Defendant Smith acting in concert with them, Plaintiff Kevin Fowler sustained damages which he is entitled to recover, along with his costs and attorneys' fees.

## IV.     Causes of Action

38.     <u>Alternative Pleadings</u>.  To the extent necessary, each of the claims set forth below is pleaded in the alternative.

**A.     Count One:     Malicious Prosecution**
**[Pendant State Law Claim against Defendants Joplin, Pehl, Brunk, and Smith, in their individual capacities only]**

39.     All paragraphs above and below are adopted by reference as if fully stated herein.

40.     The individual Defendants committed malicious criminal prosecution.  The conduct described above includes the following elements: (1) a criminal proceeding was commenced against the plaintiff; (2) the defendant initiated or procured the criminal proceeding; (3) the proceeding was terminated favorably for plaintiff; (4) regarding the charged crime, plaintiff was innocent; (5) there was not probable cause to initiate the criminal proceeding against the plaintiff; (6) defendant acted with malice in filing the charge; and (7) the plaintiff suffered damages as result of this conduct. *See Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 518 (Tex. 1997).

41.     The Texas Supreme Court has long recognized that "[i]t is important that every citizen should be protected against malicious prosecutions, and it is equally important that crimes should be punished, in order that the law-abiding citizen may be secure in life, liberty, and property." *Sebastian v. Cheney*, 86 Tex. 497, 25 S.W. 691, 694 (Tex. 1894); *see also Browning-Ferris Indus. v. Lieck*, 881 S.W.2d 288, 290 (Tex. 1994).

42.     Yet, Defendants here did not balance the right of Kevin Fowler to be free from malicious prosecution while ensuring that an actual crime be punished. All elements of malicious prosecution have been pled: A criminal prosecution was commenced against Kevin Fowler. The

Defendants initiated the criminal proceeding against Kevin Fowler, despite there not being any probable cause to do so. Here, after Joplin turned the matter over to deputy constable Pehl for "investigation," Pehl told Kevin Fowler that if he had a dispute over the services performed, he should file a civil action. Yet, despite acknowledging it was a civil matter to be decided by the civil courts, Pehl, in concert with and on behalf of all Defendants, pursued criminal charges and obtained an arrest warrant against Kevin Fowler for theft of service. Pehl never inquired as to whether there had been a demand made as required by Texas Penal Code Section 31.04(a)(4). Thus, probable cause did not exist to pursue these charges.[2]

43. Then, after Fowler attempted to pay the disputed amount, Smith refused to accept the payment. Smith ultimately accepted long after payment was first offered, and only after being directed to do so by the Smith County district attorney's office. Defendants, including Smith and the prosecutor for Smith County, continued the prosecution against Kevin Fowler and the case went to trial in early spring 2019. The trial court entered a motion for directed verdict of acquittal and the judge signed and entered an order of acquittal on April 16, 2019. As a result of the malicious prosecution, Kevin Fowler has been damaged as set forth above, and here seeks all available damages, including his actual economic damages, damage to his reputation, out of pocket costs, mental anguish, loss of income, and punitive damages.

**B.     Count Two:   Violation of 42 U.S.C. § 1983 – Fourteenth and Fifth Amendments**

44,     All paragraphs above and below are adopted by reference as if fully stated herein.

---

[2] Probable cause is defined

> as "the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor [complainant], that the person charged was guilty of the crime for which he was prosecuted."

*Richey*, 952 S.W.2d at 517.

45. Kevin Fowler was arrested, charged, and prosecuted for theft of service pursuant to section 31.04 of the Texas Penal Code by Defendants in violation of 42 U.S.C. § 1983. 42 U.S.C. § 1983 states

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . .

42 U.S.C.S. § 1983.

46. As set forth above, Defendants' actions constitute violations of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States. Here, there was no probable cause to issue a warrant or to pursue criminal charges against Kevin Fowler, and he was subjected to selective prosecution and the deprivation of his right to equal protection simply because the Defendants banded together to teach a lesson to a citizen who had sent a text – regarding a disputed dirt hauling agreement – to a fellow police officer.

47. Further, because there was no probable cause, the deprivation of Kevin Fowler's liberty interest in his right to pursue his occupation was denied without due process, in violation the Fifth Amendment of the Constitution of the United States.

48. As a result of the foregoing, Fowler has been damaged and hereby seeks to recover his damages resulting from said conduct by Defendants in an amount to be proven at trial.

49. Fowler specifically sues all Defendants pursuant to 42 U.S.C. § 1983. All of Defendants' conduct was under color of law, and Defendants, including Defendant Smith, were state actors. Defendants were following the County's policies in the actions they took and/or were policy makers for the County. Fowler seeks recovery of the full measure of relief and damages against all Defendants, including but not limited to his actual economic damages, damage to his

reputation, out of pocket costs, loss of income, compensatory and/or nominal damages (including mental anguish and emotional distress damages), consequential and incidental damages, exemplary damages, and any and all other relief which may be available under law or in equity, in excess of one million dollars.

**C.     Count Three: Violation of 42 U.S.C. § 1983 – Fourth Amendment - False Imprisonment and Malicious Prosecution**

50. All paragraphs above and below are adopted by reference as if fully stated herein.

51. Defendants had no probable cause to pursue the criminal charges of theft of services against Kevin Fowler, and no probable cause existed when Kevin Fowler was held without his consent in jail for eight hours, after voluntarily turning himself in. The theft of services charge was terminated favorably against Plaintiff Kevin Fowler, but only years after the initial unlawful false arrest.

52. Defendants' conduct violated the Fourth Amendment of the Constitution of the United States, for which Fowler now sues pursuant to 42 U.S.C. § 1983. All of Defendants' conduct was under color of law, and all Defendants, including Defendant Smith, were state actors. Defendants were following the County's policies in the actions they took and/or were policy makers for the County. Fowler seeks recovery of the full measure of relief and damages against all Defendants, including but not limited to his actual economic damages, damage to his reputation, out of pocket costs, loss of income, compensatory and/or nominal damages (including mental anguish and emotional distress damages), consequential and incidental damages, exemplary damages, and any and all other relief which may be available under law or in equity, in excess of one million dollars.

**D.     Count Four:   Deprivation of Procedural and Substantive Due Process**

53.     All paragraphs above and below are adopted by reference as if fully stated herein.

54.     Fowler was denied his liberty and property interests by Defendants acting under color of law without due process of law in violation of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

55.     The Defendants, acting individually and in their official capacities, also deprived Plaintiff of substantive due process in that their conduct was arbitrary and capricious, all in violation of the Fourteenth Amendment to the United States Constitution.  As a result of the deprivations of procedural and substantive due process, Plaintiff has been damaged in an amount in excess of one million dollars, and seeks such recovery.

56.     Defendants' actions were arbitrary, irrational, and capricious because, among other things, at no point prior to December 2018 was the first element of theft of services established, to wit, a certified written demand.  Once such notice of demand was made, the debt was paid almost immediately.  Further, Kevin Fowler had no part in the original request for services, nor were services furnished to him.  Finally, Kevin Fowler repeatedly attempted to pay the amount sought by Smith, but was refused, because the Smith County constables selectively enforced the law based only on their view that "you can't treat a cop like that."

57.     Defendants' actions are arbitrary, irrational and capricious—enough so to shock the conscience.  Defendants sought criminal prosecution over a disputed civil debt, and dragged out the proceedings to continue to inflict baseless humiliation, mental anguish, and loss of income on Kevin Fowler.  This arbitrary, irrational and capricious behavior is more than enough to shock the conscience of an ordinary person.

58.     Defendants' actions violated Plaintiff's substantive due process rights under the Fourteenth Amendment, proximately causing damages for which Plaintiff sues.

59.     The named Defendants are also liable in their individual capacities.  Their conduct described herein violates clearly established statutory or Constitutional rights of which a reasonable person would have known at the time of the transgressions.  The right to procedural due process and equal protection have long been clearly established law under circumstances similar to the ones present in this case and Defendants individually are charged with such knowledge.  The violations by Defendants individually occurred under current and then-existing law.  The actions of the Defendants individually were objectively unreasonable in light of the law that was clearly established at the time of their wrongful actions, complained of herein.  The Defendants, individually, are charged with the knowledge that Plaintiff had due process rights within the meaning of the Fourteenth Amendment of the Constitution of the United States; and that Plaintiff could not be deprived of such rights without due process of law.

60.     The individual Defendants purported to be acting under color of law and were state actors within the meaning of the Fourteenth Amendment of the Constitution of the United States.  Their actions were arbitrary and capricious, manifestly unjust and were clear violations of clearly established constitutional and statutory law.

61.     Defendants, through the above-described actions, deprived Kevin Fowler of his liberty interest in his personal and professional reputation, again in violation of the Fourteenth Amendment and the clearly established law referred to above.  In addition to all available damages, Plaintiff seeks injunctive relief prospectively to enjoin the Defendants from causing or permitting the further harassment of Fowler and abuse of their offices.

## V.     Relief Requested

62.     Fowler seeks to recover all actual and compensatory damages available at law and/or equity against Defendants, including without limitation damages to his business, consequential and incidental damages, and any and all other equitable and compensatory relief which may be available under law and/or in equity.

63.     Fowler also seeks damages against Defendants for his mental anguish resulting from the knowing, intentional, and malicious deprivation of his constitutionally protected rights.

64.     Fowler also seeks punitive/exemplary damages against Defendants individually, as they knowingly, intentionally, and maliciously violated his clearly established Constitutional rights.

65.     Fowler seeks prospective and injunctive relief prohibiting Defendants from further harassment of Fowler or abuse of their offices.

## VI.     Fees, Costs and Interest

66.     Plaintiff has retained the law firm of Hill Gilstrap, P.C. to represent him in connection with this matter, and has agreed to pay for such reasonable and necessary services. In addition to and without waiving and/or limiting any other relief requested in this Complaint, Plaintiff is entitled to and seeks to recover his reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law, in equity, and/or pursuant to 42 U.S.C. §§ 1983, 1988(b), and/or Texas law. Additionally, pursuant to 42 U.S.C. § 1988(c), Plaintiff seeks to recover any and all expert fees, which he incurs and/or

may incur in bringing this suit. Plaintiff also seeks to recover costs of court, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.   Jury Demand

67.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests trial by jury.

## Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer, and that, upon final hearing, Plaintiff recover judgment under Counts Two, Three, and Four against Smith County and all other Defendants in their official and individual capacities, and under Count One against the individual Defendants in their individual capacities, as follows:

(1)   any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendants;

(2)   injunctive and other equitable relief to the extent permitted by law and/or equity;

(3)   his litigation expenses and costs, including, but not limited to, his reasonable and necessary attorneys' fees and costs;

(4)   pre- and post-judgment interest at the maximum rate permitted by law;

(5)   costs of court; and

(6)   such other and further relief, general and/or special, at law or in equity, to which Plaintiff may show himself to be justly entitled.

      Respectfully submitted,

      /s/ Frank Hill
      Frank Hill      09632000
      fh@hillgilstrap.com

      **HILL GILSTRAP, P.C.**
      1400 West Abram Street
      Arlington, Texas 76013
      (817) 261-2222
      (817) 861-4685 (fax)

      **ATTORNEYS FOR PLAINTIFF**